Nos. 2--04--0341 & 2--04--0342 cons.

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

In re
 ROBERT H., a Minor ) Appeal from the Circuit Court

) of Du Page County.

)

) No. 99--JA--87

)

(The People of the State of Illinois, ) Honorable

Petitioner-Appellee, v. Robert H., Sr., ) Thomas C. Dudgeon,

and Roxanne H., Respondents-Appellants). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondents, Robert H., Sr., and Roxanne H., the biological parents of Robert H., filed separate appeals from the trial court's order (1) finding that it was in Robert H.'s best interests to remain under the care of the subsidized guardians appointed in a separate probate proceeding; (2) discharging the Department of Children and Family Services (DCFS) as guardian of Robert H.; (3) terminating wardship of Robert H.; (4) discharging the public defender and guardian 
ad litem
; and (5) closing the juvenile case.  On appeal, respondents argue that the trial court's order improperly permits the subsidized guardianship to continue indefinitely and prevents them from making further efforts to accomplish reunification.  We affirm.

On February 29, 2000, the trial court adjudicated three-year-old Robert H. a neglected minor and made him a ward of the court.  The State's neglect petition, which respondents neither admitted nor denied, alleged that respondents failed to provide Robert H. with food, clothing, and shelter.  Respondents also allegedly used drugs in Robert H.'s presence.  The trial court appointed DCFS guardian of Robert H. and ordered DCFS to prepare a service plan consistent with the goal of family reunification.  The trial court granted respondents supervised visitation.

The trial court conducted a permanency review hearing on August 29, 2000, and set a permanency goal of return home within 12 months.  At this hearing, the trial court received evidence that respondents were not in full compliance with the tasks of the client service plan dated August 7, 2000.  The trial court ordered respondents to comply with all tasks outlined in the service plan.

The State petitioned for termination of respondents' parental rights on April 16, 2001.  The State alleged that respondents had failed to make reasonable efforts to correct the conditions that led to Robert H.'s removal.

On April 17, 2001, the trial court conducted a permanency review hearing.  The trial court received a report from DCFS indicating that respondents had not made significant progress towards the goal of reunification.  The report noted respondents' "continued lack of cooperation/progress in services."  Specifically, respondents had failed to sufficiently address their substance abuse problems.  Robert H., Sr., tested positive for cocaine use in December 2000 and in January 2001; Roxanne H. tested positive for cocaine use in January and March 2001.  Respondents had failed to participate in weekly counseling after December 2000 and had not attended Alcoholics Anonymous and Narcotics Anonymous meetings since October 2000.  At the close of the hearing, the trial court changed the permanency goal from return home to substitute care pending court determination on the termination of parental rights.

On December 7, 2001, following a hearing, the trial court denied the State's petition to terminate parental rights.  The trial court determined that the State had failed to prove by clear and convincing evidence that respondents had failed to make reasonable efforts to correct the conditions that were the basis for Robert H.'s removal or to make reasonable progress towards Robert H.'s return within nine months after the adjudication of neglect and within the second nine-month period as defined in section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)).  The trial court noted that respondents had, during the relevant time period, made reasonable efforts to improve their living conditions and to achieve the goals of the service plan.  Although the trial court noted that respondents had failed to sufficiently address their drug abuse, it nonetheless noted that respondents had satisfactorily completed other tasks, such as parenting classes.  The trial court also noted that respondents had fully participated in visitation with Robert H. and that the visits were positive.  The trial court thus concluded that the State had failed to prove respondents' unfitness by clear and convincing evidence.

The trial court conducted another permanency review hearing over several dates in April and May 2002.  During this hearing, the trial court received a DCFS report indicating that respondents were not cooperating with all DCFS directives.  On May 16, 2002, at the close of the hearing, the trial court selected a permanency goal of subsidized guardianship.  The trial court's written order provided that reunification was no longer an achievable goal given respondents' inability to provide stable housing.  The trial court explained that, despite prior rulings that respondents had made reasonable efforts to obtain stable housing, new evidence established that such efforts were "illusory."  The trial court also found, however, that the State would be unable to prove that termination of respondents' parental rights was in Robert H.'s best interests.  The trial court explained that respondents visited regularly with Robert H. and that he enjoyed these visits and looked forward to them.  The trial court thus concluded that subsidized guardianship with Robert H.'s foster parents was the best permanency option.

DCFS subsequently submitted a case plan with a recommended goal of subsidized guardianship and submitted the matter for legal screening and approval of subsidies.  On February 6, 2003, DCFS approved the subsidies.  The trial court directed DCFS to file a petition for the appointment of a guardian in the probate court.  On July 22, 2003, DCFS initiated a probate proceeding docketed as case number 03--P--715 and petitioned for the appointment of Robert H.'s foster parents as guardians.

After the probate court appointed Robert H.'s foster parents as guardians, DCFS moved the trial court to discharge its guardianship, terminate wardship, and close the juvenile case.  Over respondents' objection, the trial court granted the motion on March 16, 2004.  In its order, the trial court also discharged the public defender and the guardian 
ad litem
.  Respondents filed separate notices of appeal from this order, and we have consolidated the cases for decision.  As noted by the parties, the trial court's March 16, 2004, order closing the juvenile case was a final order, and we have jurisdiction to hear the appeal under Supreme Court Rule 301 (155 Ill. 2d R. 301).  See 
In re M.M.
, 337 Ill. App. 3d 764, 777 (2003).

Respondents' sole contention on appeal is that the trial court erred in closing the juvenile case.  Respondents argue that the order improperly permits the subsidized guardianship to continue indefinitely and prevents them from making further efforts to accomplish reunification with Robert H.  Respondents argue that the trial court's order, which requires DCFS to terminate all services and prevents them from seeking further redress from the trial court, is akin to an order terminating their parental rights.  Respondents argue that such an order is inconsistent with the trial court's December 7, 2001, order denying the State's petition to terminate respondents' parental rights.

Respondents' contention is at odds with the provisions of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1--1 
et
 
seq.
 (West 2002)), which specifically authorize the permanent transfer of guardianship when other options are unavailable.  Section 2--28(2) of the Act provides:

"At the permanency hearing, the court shall determine the future status of the child.  The court shall set one of the following permanency goals:

(A) The minor will be returned home by a specific date within 5 months.

(B) The minor will be in short-term care with a continued goal to return home within a period not to exceed one year ***.

(B-1) The minor will be in short-term care with a continued goal to return home pending a status hearing. ***

(C) The minor will be in substitute care pending court determination on termination of parental rights.

(D) Adoption, provided that parental rights have been terminated or relinquished.

(E) The guardianship of the minor will be transferred to an individual or couple on a permanent basis provided that goals (A) through (D) have been ruled out.

* * *

***  Where the court has selected a permanency goal other than (A), (B), or (B-1), the Department of Children and Family Services shall not provide further reunification services, but shall provide services consistent with the goal selected."  705 ILCS 405/2--28(2) (West 2002).

Here, for the reasons expressed in its March 16, 2002, order, the trial court found that none of the permanency goals detailed in subsections (A) through (D) of section 2--28(2) were appropriate.  Under these circumstances, the trial court was authorized pursuant to section 2--28(2)(E) to enter a permanency goal of subsidized guardianship.  Additionally, after the trial court selected this goal, DCFS was statutorily prohibited from providing further reunification services.  
See 705 ILCS 405/2--28(2) (West 2002).
  We note that respondents have not raised a constitutional challenge to section 2--28(2); nor have respondents argued that the trial court's decision to select a permanency goal of permanent subsidized guardianship was contrary to the manifest weight of the evidence.  As the trial court was statutorily authorized to take the action that it did in this case, respondents' allegations of error are without merit.

Additionally, we reject respondents' argument that the trial court's action in closing the juvenile case was akin to a termination of parental rights.  In 
M.M.
, this court specifically noted that permanent guardianship is a statutory disposition alternate 
to termination of parental rights.  
M.M.
, 337 Ill. App. 3d at 776-77.  We explained:

"[C]ourts that deal with minors such as E.S. and M.M., for whom return home is against their best interests but for whom adoption is not an option because parental rights have not been terminated, are left with two choices that are both against the minors' best interests.  The court may either return the minors home or subject them to a continuous state of uncertainty by keeping them with their guardians.  Such a rule is at odds with the statutory goals of serving children's psychological and emotional welfare and fostering permanency.  Conversely, an effective middle ground between adoption and return home, such as 'guardianship on a permanent basis,' promotes these objectives because it allows courts a third option for permanent placement where, as here, neither adoption nor return home is appropriate."  
M.M
, 337 Ill. App. 3d at 776-77.

See also 
In re S.J.K.
, 149 Ill. App. 3d 663, 673 (1986) (rejecting argument that a trial court's order of "permanent" custody to foster parents was a 
de
 
facto
 termination of the parental rights of natural parents).

Here, the trial court expressly found that it was not in Robert H.'s best interests to terminate respondents' parental rights, due to the positive benefits gained from visitation.  Indeed, the trial court's written order contemplates that respondents' visitation with Robert H. will continue.  In light of the trial court's finding that return home was not an appropriate goal given respondents' failure to achieve the objectives of their service plans, permanent guardianship provided a third option for permanent placement that would bring some much needed certainty to Robert H.'s life.  See 
M.M.
, 337 Ill. App. 3d at 776-77.  The need for such permanency was substantial given the fact that the juvenile case proceedings had continued in excess of four years.

We also reject respondents' conclusory assertions that they will not be able to persist in their attempts at reunification with Robert H. because they will no longer have access to DCFS services and will not be appointed legal representation in the probate proceedings.  Nothing in the trial court's order precludes respondents from pursuing reunification and petitioning the probate court for a change in guardianship at some point in the future.  Although respondents will no longer be receiving DCFS services, respondents may nonetheless seek services from other public and private agencies to address the continuing problems that initiated this proceeding.  Respondents may represent themselves, or seek the assistance of various legal assistance agencies to obtain legal representation, in the event that they desire to file a petition in the probate proceeding.  As noted by the State, the provisions of the Act do not guarantee the provision of unlimited services to parents who have consistently refused to comply with court orders and the tasks outlined in their service plans.  Indeed, we note that respondents received the benefits of DCFS services and legal representation for more than four years during the pendency of this proceeding.

As acknowledged by respondents, the authority they cite in support of their arguments predates the current version of section 2--28(2) of the Act, which requires DCFS to cease providing reunification services upon the selection of a permanency goal of permanent guardianship.  See 
In re P.F
, 265 Ill. App. 3d 1092 (1994).  Therefore, 
P.F.
 does not compel us to reach a different result.

Lacking any contention that the governing statutory provisions are unconstitutional or that the action taken by the trial court was against the manifest weight of the evidence, we conclude that the trial court had the statutory authority to close this juvenile proceeding and to discharge DCFS and the public defender.  We therefore affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and CALLUM, JJ., concur.