2018 IL App (4th) 180208
NO. 4-18-0208

FILED
August 14, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* A.P.-M., A.P., A.M., and S.J., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (In re A.M., a Minor | ) | McLean County |
| | ) | Nos. 16JA7 |
| | ) | 16JA8 |
| (The People of the State of Illinois, | ) | 16JA9 |
| Petitioner-Appellee, | ) | 16JA10 |
| v. | ) | |
| Angel P., | ) | Honorable |
| Respondent-Appellant)). | ) | Kevin P. Fitzgerald, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        Angel P., respondent, is the mother of S.J. (born April 28, 2003), A.M. (born

April 15, 2008), A.P. (born November 25, 2013), and A.P.-M. (born April 7, 2015).  (We note

that this case is titled *In re* A.P.-M. and bears the trial court No. 16-JA-7. However, this appeal

concerns respondent's parental rights over A.M. initiated as 16-JA-9.) In June 2016, the trial

court vested custody and guardianship of S.J. in his father and made A.M., A.P., and A.P.-M.

wards of the court and vested guardianship of these children with the Department of Children

and Family Services (DCFS) with the goal to return the children to respondent's care within 12

months.

¶ 2        In December 2016, the State filed a petition to terminate respondent's parental

rights. In February 2017, the trial court found that respondent was an unfit parent. In May 2017, the court terminated respondent's parental rights as to S.J., A.P., and A.P.-M. However, because the court wanted to give A.M.'s father more time to comply with service plans, the court did not terminate respondent's parental rights as to A.M. The court changed A.M.'s permanency goal to return home to her father within 12 months. In August 2017, DCFS stopped providing reunification services to respondent. Respondent's lawyer did not object. In February 2018, the trial court conducted a second best-interest hearing and terminated respondent's parental rights as to A.M.

¶ 3        Respondent appeals, arguing (1) the trial court lacked jurisdiction to enter the second order terminating her parental rights as to A.M., (2) she was denied due process when DCFS stopped providing her reunification services, and (3) trial counsel rendered ineffective assistance of counsel. We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5                              A. The Adjudication of Wardship

¶ 6        Respondent is the mother of S.J., A.M., A.P., and A.P.-M. In February 2016, the State filed a petition for adjudication of wardship, alleging that respondent's four children were neglected because respondent had (1) anger-management issues and (2) alcohol-abuse issues creating an environment that was injurious to their welfare. 705 ILCS 405/2-3(1)(b) (West 2016). In March 2016, the trial court held an adjudicatory hearing. The court adjudicated the children as neglected minors because respondent stipulated that she had alcohol-abuse issues. *Id.*

¶ 7        In June 2016, the trial court vested custody and guardianship of S.J. to S.J.'s father. The court made A.M., A.P., and A.P.-M. wards of the court and vested guardianship with DCFS. The court stated that its goal was to return the children to respondent's care within 12 months. In July 2016, A.M.'s paternal grandmother and stepgrandfather became A.M.'s foster

- 2 -

parents.

¶ 8                                    B. The Trial Court's Fitness Determination

¶ 9            In December 2016, the State filed a petition to terminate respondent's parental rights, alleging that she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare and (2) failed to make reasonable progress toward the goal of returning her children home. 750 ILCS 50/1(D)(*l*), (D)(m)(ii) (West 2016). In February 2017, the trial court found respondent to be an unfit parent after respondent conceded that she failed to make reasonable progress toward the goal of returning her children home. *Id.* § 1(D)(m)(ii).

¶ 10                                   C. The First Best-Interest Hearing

¶ 11           In May 2017, the trial court conducted the best-interest portion of the termination hearing. A police officer testified about a March 2017 incident where respondent, who appeared to be intoxicated, was arrested. Respondent's domestic-violence counselor testified that respondent relapsed multiple times and appeared in court under the influence of alcohol. A DCFS caseworker testified that A.M. had been successfully living with her grandmother and stepgrandfather since July 2016. A.M.'s father testified that he was a forklift operator, that he loved A.M. very much, and that he had been sober since January 2016.

¶ 12           The trial court terminated respondent's parental rights as to S.J., A.P., and A.P.-M. However, the court declined to terminate A.M.'s father's parental rights, concluding that he "deserves a chance to be able to demonstrate [his] sobriety." Because the court concluded that it was not currently in A.M.'s best interest to terminate her father's parental rights, the court noted that "I don't really see the point of terminating mom's rights at this point in time as to [A.M.]."

¶ 13           That same day, the trial court entered a revised permanency order. 705 ILCS 405/2-28(2) (West 2016). In the written order, the court concluded that the mother was not mak-

ing reasonable efforts or reasonable progress toward returning A.M. home. The court further concluded that the "mother is not a return home option." The court changed A.M.'s permanency goal to returning to her father within 12 months.

¶ 14                              D. The Updated Service Plan

¶ 15          In August 2017, DCFS updated its family service plan. In the plan, DCFS stated that "[A.M.'s] return home goal is specifically to return home to her father. DCFS is not ordered to provide [respondent] with services at this time. [Respondent] has had little involvement in this case since her rights were terminated on the other children." Accordingly, DCFS stopped providing reunification services to respondent. Respondent's trial counsel did not object to the termination of reunification services at the next permanency hearing.

¶ 16                              E. The Second Best-Interest Hearing

¶ 17          In February 2018, the trial court conducted a second best-interest hearing. At the hearing, A.M.'s father consented to A.M. being adopted by her foster parents. With the father consenting to adoption, the court addressed whether it was in the best interest of A.M. to terminate respondent's parental rights. After the presentation of evidence and argument, the court terminated respondent's parental rights over A.M., reasoning as follows:

> "[W]hen we were here last May [at the first best-interest hearing], the reason I didn't terminate [respondent's parental] rights at that time is because I thought [A.M.'s father] *** had the potential for being a return home [parent]. *** But had it not been for [A.M.'s father] appearing to be a return-home parent, I would have terminated [respondent's] rights for the same reason I terminated the rights as to the other three children."

¶ 18          This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20        Respondent appeals, arguing (1) the trial court lacked jurisdiction to enter the second order terminating her parental rights as to A.M., (2) she was denied due process when DCFS stopped providing her reunification services, and (3) trial counsel rendered ineffective assistance of counsel. We address these issues in turn.

¶ 21                          A. The Trial Court's Jurisdiction

¶ 22        Respondent argues that the trial court lacked jurisdiction to enter the second order that terminated her parental rights as to A.M. We disagree.

¶ 23                              1. *The Applicable Law*

¶ 24        A trial court is divested of jurisdiction over a matter when (1) 30 days have passed following the entry of a final and appealable order concerning that matter and (2) during that time, neither party has taken any legally proper action to extend the 30-day period. *Leavell v. Department of Natural Resources*, 397 Ill. App. 3d 937, 950, 923 N.E.2d 829, 843 (2009). An order is final if it terminates the litigation between the parties on the merits and disposes of the rights of the parties so that if the order is affirmed, the trial court need only execute the order. *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 23, 52 N.E.3d 378. When determining whether an order is final, the ultimate issue is whether the order fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined. *Id.*

¶ 25                                  2. *This Case*

¶ 26        The May 2017 order was not a *final* order because it did not fully dispose of the rights of the parties. See *id.* Instead, this order only terminated respondent's parental rights as to S.J., A.P., and A.P.-M.  The order had not conclusively determined whether A.M.'s father would

- 5 -

have his parental rights terminated. Accordingly, because this was not a final order, the trial court had jurisdiction when it issued the February 2018 order that terminated respondent's parental rights. See *Leavell*, 397 Ill. App. 3d at 950.

¶ 27                                    B. Due Process

¶ 28        Respondent argues that DCFS denied her due process of law when it ended reunification services in August 2017. We disagree.

¶ 29                                    1. *The Applicable Law*

¶ 30        One of the fundamental rights protected by the due process clause of the fourteenth amendment is the right of a parent to make decisions regarding the care, custody, and control of her child without unwarranted state intrusion. *In re D.T.*, 2017 IL App (3d) 170120, ¶ 23, 83 N.E.3d 485; U.S. Const., amend. XIV. The State's interference with a parent's rights is justified in limited instances in order to protect the health, safety, and welfare of the child. *D.T.*, 2017 IL App (3d) 170120, ¶ 23. In the context of proceedings to terminate parental rights, due process is achieved when the State complies with the provisions of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2016)) and fundamental fairness. *In re Al. P.*, 2017 IL App (4th) 170435, ¶ 54, 87 N.E.3d 1101.

¶ 31        The Juvenile Court Act, in pertinent part, states as follows:

        "At the permanency hearing, the court shall determine the future status of the child. The court shall set one of the following permanency goals:

                (A) The minor will be returned home by a specific date within 5 months.

                (B) The minor will be in short-term care with a continued goal to return home within a period not to exceed one year, where the progress of

- 6 -

the parent or parents is substantial giving particular consideration to the age and individual needs of the minor.

(B-1) The minor will be in short-term care with a continued goal to return home pending a status hearing. ***

* * *

*** Where the court has selected a permanency goal other than (A), (B), or (B-1), the Department of Children and Family Services shall not provide further reunification services, but shall provide services consistent with the goal selected." 705 ILCS 405/2-28(2) (West 2016).

¶ 32    In *In re Robert H.*, 353 Ill. App. 3d 316, 318-20, 818 N.E.2d 406, 408-09 (2004), the trial court found the permanency goals detailed in subsections (A) through (B-1) of section 2-28(2) were not proper because the parents were unable to provide stable housing. Thus, the court authorized subsidized guardianship with the child's foster parents. *Id.* at 319. While affirming this order, the Second District concluded that "after the trial court selected this goal [of subsidized guardianship], DCFS was statutorily prohibited from providing further reunification services [to the parents]." *Id.* at 320 (citing 705 ILCS 405/2-28(2) (West 2002)).

¶ 33                              2. *This Case*

¶ 34    In June 2016, the trial court stated that its goal was to return A.M. to respondent's care within 12 months. In May 2017, the trial court terminated respondent's parental rights as to three of her four children. Although the court did not then terminate respondent's parental rights as to A.M., the court changed A.M.'s permanency goal to returning home to her father within 12 months. In August 2017, DCFS terminated respondent's reunification services as to A.M.

¶ 35    Because the trial court directed that A.M. would not be returned home to respond-

- 7 -

ent, DCFS properly terminated her reunification services under the Act. 705 ILCS 405/2-28(2) (West 2016); *Robert H.*, 353 Ill. App. 3d at 320. Moreover, it was not fundamentally unfair for DCFS to terminate respondent's reunification services when A.M. was not scheduled to be reunified with respondent. Accordingly, DCFS did not violate respondent's due process rights.

¶ 36                                  C. Ineffective Assistance of Counsel

¶ 37          Finally, respondent argues that she received ineffective assistance of counsel because her attorney failed to object to the termination of reunification services. We disagree.

¶ 38                                  1. *The Applicable Law*

¶ 39          Illinois courts apply the same standard utilized in criminal cases to determine a parent's claim of ineffective assistance of counsel appointed under the Juvenile Court Act. *In re A.J.*, 323 Ill. App. 3d 607, 611, 753 N.E.2d 551, 553 (2001). To prevail on such a claim, a defendant must show that counsel's performance was (1) deficient and (2) prejudicial. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10, 93 N.E.3d 664.

¶ 40          To establish deficient performance, a defendant must show that her attorney's performance fell below an objective standard of reasonableness. *Id.* Judicial review of counsel's performance is highly deferential. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 38, 83 N.E.3d 671. A defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327, 948 N.E.2d 542, 547 (2011). Trial strategy includes decisions such as what matters to object to and when to object. *People v. Ramsey*, 2017 IL App (1st) 160977, ¶ 36, 86 N.E.3d 1068.

¶ 41          To establish prejudice, the defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). A reasonable probability is defined

as a probability that undermines confidence in the outcome of the trial. *Id.* Failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 42                                    2. *This Case*

¶ 43            First, respondent fails to demonstrate deficient performance. We have already concluded that DCFS was statutorily prohibited from providing further reunification services to respondent after the trial court changed the goal of reunification to the father. 705 ILCS 405/2-28(2) (West 2016); *Robert H.*, 353 Ill. App. 3d at 320. Accordingly, it was proper for trial counsel not to object to the termination of respondent's reunification services. See Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010) ("A lawyer shall not *** assert *** an issue therein, unless there is a basis in law and fact for doing so that is not frivolous ***.").

¶ 44            Second, respondent fails to demonstrate prejudice. Simply put, even if trial counsel would have objected to the termination of reunification services and requested that the permanency goal should be changed to the mother, it is highly unlikely that the trial court would have granted this request. The record clearly demonstrates that respondent failed to complete reunification services when DCFS offered them to her, she continued to have documented alcohol relapses after DCFS terminated reunification services, and the trial court had recently terminated respondent's parental rights as to her other three children. On appeal, respondent does not argue that she could have complied with reunification services or that she would have been a proper placement for A.M. Thus, because respondent failed to demonstrate a reasonable probability that the result of the proceeding would have been different, she has failed to establish prejudice. *Houston*, 229 Ill. 2d at 4. As such, we reject her ineffective assistance of counsel argument. *Simpson*, 2015 IL 116512, ¶ 35.

¶ 45                            III. CONCLUSION

¶ 46        For the reasons stated, we affirm the trial court's judgment.

¶ 47        Affirmed.