2021 IL App (2d) 200520-U
No. 2-20-0520
Order filed February 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* J.L., a minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No. 1 7-JA-402 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Jessica L., Respondent- | ) | Mary Linn Green, |
| Appellant.) | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

## ORDER

*Held:* Respondent-mother was not prejudiced by assistance of counsel in termination of parental rights proceedings when there was overwhelming evidence of her unfitness.

Respondent mother, Jessica L. also known as Jessica R., appeals from the Winnebago County circuit court's finding of unfitness and termination of parental rights to her 11-year-old daughter, J.L. Respondent's only claim on appeal is that she was denied effective assistance of trial counsel, when counsel introduced no evidence to rebut the presumption of depravity and did not request a bill of particulars detailing the alleged injurious conditions in J.L.'s environment. We hold that respondent was not prejudiced by trial counsel and affirm.



## I. BACKGROUND

Respondent and J.L., born in June 2009, have had a long history of involvement with the Department of Children and Family Services (DCFS). In January 2010, the State filed a neglect petition, and DCFS took temporary custody of J.L. due to respondent's substance abuse. J.L. was placed with her maternal uncle and aunt, who were awarded permanent guardianship of J.L. in October 2014. In November 2014, three weeks after the circuit court discharged DCFS as J.L.'s guardian, respondent petitioned the court to regain guardianship of J.L. The court denied respondent's motion without prejudice and set a status date in June 2015. At that hearing, the court terminated the uncle and aunt's guardianship and awarded custody of J.L. back to respondent.

In August 2017, respondent was involved in a single-vehicle accident and fled the scene before police and emergency medical personnel arrive. J.L. was unsecured in the back of the van, which did not have any back seats. Respondent was quickly found by police and arrested. Respondent refused medical care for J.L., despite there being several large, loose objects *(1:e.,* a spare tire) that shifted during the accident, and DCFS was contacted. On December 21, 2017, respondent and her brother were involved in a domestic violence incident, during which J.L. was pushed. Respondent was arrested for her involvement in the dispute. J.L. stayed with respondent's friend that night. The next morning, respondent's friend dropped J.L. off at school and informed the staff that she would not be picking J.L. up, as her own children had previously been removed by DCFS.

On December 27, 2017, the State filed a neglect petition, alleging J.L. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2016) ), alleging respondent (1) failed to cure the conditions for which the minor's siblings were in the care of DCFS, (2) had a history of domestic violence, and (3) had

a substance abuse problem, which prevented her from properly parenting. In the petition, the State also requested that the circuit court terminate respondent's parental rights and to appoint DCFS as legal guardian with the power to consent to adoption, alleging that respondent was unfit because she was depraved pursuant to section 1(D)(i) of the Adoption Act. 750 ILCS 50/1(D)(i). Respondent waived her right to a shelter care hearing, and the circuit court entered an order granting temporary custody and guardianship of J.L. to DCFS.

7    In May 2018, the State filed an amended neglect petition, now alleging J.L. was a neglected minor pursuant to both section 2-3(l)(a) and section 2-3(1)(b) of the Juvenile Court Act, in that J.L.'s environment was injurious to her welfare because of respondent's actions (including the August 2017 car accident, the December 2017 domestic violence incident, and a March 2018 DUI) and because respondent did not have an adequate care plan for J.L. when she became incarcerated. 705 ILCS 405/2-3(l)(A) (West 2018); *jd* § 2-3(1)(b). Similar to its predecessor, the amended petition included a request that the circuit court terminate respondent's parental rights and to appoint DCFS as legal guardian with the power to consent to adoption. The petition included two counts of unfitness: (1) depravity pursuant to section 1 (D)(i) of the Adoption Act and (2) failure to protect J.L. from conditions within her environment that are injurious to her welfare pursuant to section 1 (D)(g) of the Adoption Act. 750 ILCS 50/1(D)(i); *jd* § 1(D)(g).

8    The circuit court held the combined hearing to adjudicate neglect, determine unfitness, and decide whether it was in J.L.'s best interests to terminate respondent's rights (see 705 ILCS 405/2-21(5) (West 2018) ) over the course of five days from August 2018 through March 2019. During the hearing, the State elicited testimony from several police officers, a forensic scientist from the Illinois State Police, the family's caseworker, and respondent, who testified only to her last name changing. The State also introduced over 90 exhibits into evidence, including the integrated

assessment for the current case, two indicated packets of neglect, orders and a service plan involving J.L. and her three siblings during prior neglect proceedings, several photos depicting the August 2017 car accident scene and the results of the December 2017 domestic violence incident, four felony convictions with dates ranging from 2010 through 2015, as well as records from several misdemeanor convictions. The State rested on November 16, 2018, and the court determined that it would not consider any additional evidence that occurred after that day. Respondent's counsel did not elicit any testimony or provide any evidence on respondent's behalf.

¶ 9 Due to the length of time the case was pending, the circuit court held a permanency review hearing, which took place in January 2019. After receiving evidence and hearing argument, the court set the goal for J.L. to return home within 12 months and found that respondent had made both reasonable efforts and progress to return J.L. to her care.

¶ 10 The circuit court heard argument on February 1, 2019. The State argued that respondent had been incarcerated repeatedly throughout J.L.'s life, leading to instability and confusion for J.L. Respondent's counsel noted that the circuit court had determined that respondent had made reasonable efforts and progress to return J.L. to her care during the previous month's permanency review hearing. The State objected to facts outside the record. Respondent's counsel argued that it was "highly relevant" to this case. The court reiterated that it would not consider any evidence from after November 16 and sustained the objection. Counsel concluded by acknowledging that while respondent had made "some mistakes," they were "relatively minor mistakes" and argued that for the majority of her life, J.L. was cared for by either respondent, or by close relatives or friends.

¶ 11 The circuit court announced its decision on unfitness on March 1, 2019. The court announced that after it reviewed all of the evidence and its own notes, considered the arguments

of counsel and witness credibility, it found the State had proved both counts of unfitness by clear and convincing evidence. In announcing its decision, the court highlighted that J.L. was present for the domestic violence situation between respondent and her brother as was not left with "an appropriate caregiver," when respondent was arrested thereafter. The court also highlighted that

J.L. was present and riding unsecured in the back of the van during the August 2017 car accident. The court then noted respondent's four felony convictions (a 2010 conviction for theft, a class 4 felony; a 2012 conviction for aggravated battery, a class 2 felony; a 2014 conviction for retail theft, a class 4 felony, and a 2015 conviction for deceptive practices, a class 4 felony) and "all of the evidence regarding [respondent's] misdemeanor convictions as well as traffic convictions." Finally, the court noted that respondent was incarcerated for a total of 578 days from when she received guardianship of J.L. in June 2015 through July 2018. The court then found that the presumption of depravity had not been rebutted. Immediately thereafter, the court heard testimony from the caseworker on whether it was in I.L's best interests to terminate respondent's parental rights.

12     On May 20, 2019, the circuit court found that it was not in J.L.'s best interests to terminate respondent's parental rights because "the State ha[d] not met its burden[.]" The court expressed to respondent how rare ("almost a nonoccurrence") such a finding was and explained that the burden was on the parents now to "work together for [J.L.'s] best interest[s]." The court ordered guardianship and custody to remain with DCFS, with the discretion for visitation and the goal to remain for J.L. to return home in 12 months.

13     The circuit comi held two permanency review hearings over the course of the next year. During the first post-dispositional permanency review hearing in October 2019, the State argued that respondent made reasonable efforts as she was consistent with her communication,

cooperative with the agency, and had negative drug screens. However, the State argued that the court should find respondent had not made reasonable progress because she had an ongoing criminal case for driving under the influence, a class 2 felony punishable up to 14 years in prison. The State highlighted J.L.'s need for permanence and stability. The court found that respondent had made reasonable efforts and deferred making a progress finding and changed the goal to return home in five months.

14    The second post-disposition permanency review hearing was continued to allow respondent to resolve the outstanding criminal case. However, in February 2020, the criminal matter was still not resolved, and the court held the permanency review hearing. The court found that respondent had not made reasonable efforts or progress but kept the goal at return home in five months and set a two-week date to allow respondent to resolve the criminal case.

15    Accordingly, the circuit court reconvened two weeks later. Respondent was not present, and counsel was served with the State's motion to terminate parental rights. The State argued that although respondent had signed a guilty plea within those two weeks, the criminal court would not sentence her until sometime later, causing further uncertainty to J.L.'s future with respondent. The court agreed and set two dates to conduct the best interests hearing.

16    During the best interests hearing, the State elicited testimony from the caseworker and J.L.'s current foster mother and introduced into evidence a series of photos of J.L. with her foster parents and a letter from a previous foster mother. Respondent's counsel elicited testimony from respondent regarding her relationship with J.L. and from respondent's criminal defense lawyer, involving why the criminal matter took so long to handle and what the potential outcome would be of respondent's guilty plea. On cross-examination, respondent admitted that she had been incarcerated for periods of time and was unable to care for J.L. while she was incarcerated.

After hearing oral arguments, the court found that it was in J.L.'s best interests to terminate respondent's parental rights. The court specifically found that long-term stability was "key" for J.L. and noted that respondent had been a source of instability in J.L.'s life.

This appeal timely followed.

## II. ANALYSIS

On appeal, respondent does not contest the circuit court's adjudication of neglect or best interests finding, focusing her argument instead on the court's unfitness findings. In the opening brief, respondent's appellate counsel only contends that trial counsel was ineffective for failing to elicit any evidence to rebut the presumption of depravity raised by the State's evidence. The State, in turn, filed a motion for summary disposition, arguing that because appellate counsel did not address the second count of unfitness, respondent's failure to protect J.L. from injurious conditions in her environment, we should affirm. See *In re HD.,* 343 Ill. App. 3d 483, 493 (2003) ("As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds."). However, as a parent's interest in the care, custody, and control of her child is a fundamental constitutional right *(In re R.C,* 195 Ill. 2d 291,303 (2001) ), we declined the State's motion and ordered respondent's appellate counsel to address the second count of unfitness in the reply brief to present a full argument to the court. While generally issues not raised in an opening brief are considered waived, waiver is a limitation on the parties, not on the courts. *In re Janet S.,* 305 Ill. App. 3d 318, 320 (1999). Because of the fundamental liberty interest involved, we decline to find waiver of appellate counsel's arguments and address them accordingly below.

The Juvenile Court Act establishes the procedures by which the State may petition to terminate a parent's rights. Generally, following a circuit court's adjudication of abuse, neglect, or

dependency from the State's neglect petition, proceedings to terminate parental rights proceed under a separate petition in two additional steps. *In re NB.,* 2019 IL App (2d) 180797, 25. First, the court determines whether the parent is unfit under section I(D) of the Adoption Act. 750 ILCS 50/l(D) (West 2018). Upon such a finding, the court proceeds to hold a best-interests hearing, where the court must determine whether it is in the best interests of the minor to terminate the parent's parental rights. *In re Keyon R.,* 2017 IL App (2d) 160657, 16.

22 Section 2-21(5) of the Juvenile Cout1: Act permits a circuit court to combine these hearings and terminate parental rights at the initial dispositional hearing when the original or an amended complaint contains a request to terminate parental rights and appoint a legal guardian with the power to consent to adoption. 705 ILCS 405/2-21(5) (West 2018). In addition, the court must make several findings before it may terminate a parent's parental rights at the dispositional hearing: (l) the court must find by a preponderance of the evidence that the minor is abused, neglected, or dependent; (2) the court must find by clear and convincing evidence that the parent is unfit; and (3) the court must determine that it is in the best interests of the minor to terminate parental rights and appoint a legal guardian. *Id* § 2-21(5)(i-iv). Here, the State invoked section 2-21(5) by including in both its original and amended neglect petitions a request to terminate respondent's parental rights and appoint DCFS as legal guardian with the power to consent to adoption.

23 We turn now to respondent's initial argument; respondent's trial counsel was ineffective for not introducing any evidence to rebut the presumption of depravity. The Juvenile Court Act grants a parent the right to counsel in proceedings in which the State seeks to terminate her parental rights. 705 ILCS 405/1-5(1) (West 2018). Implicit in that right to counsel is that such representation be effective. *In re. R.G,* 165 Ill. App. 3d 112, 127 (1988). To determine whether a parent has received ineffective assistance in a proceeding to terminate her parental rights, we apply

the criteria found in *Strickland v. Washington,* 466 U.S. 668 (1984). *In re Ca. B.,* 2019 IL App (1st) 181024, 42. "In order to obtain relief under *Strickland,* a parent must prove that (1) the performance of counsel in a termination proceeding fell below an objective standard of reasonableness [citation], and (2) this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different [citation]." *Id. Strickland* requires that there must be actual, not merely speculative, prejudice shown and that both prongs be satisfied; a failure to satisfy either prong precludes a finding of ineffectiveness. *Id.* (citing *People v. Bew,* 228 Ill. 2d 122, 135 (2008) and *People v. Simpson,* 2015 IL 116512, 35).

24     Appellate counsel asserts that both prongs were met here because (I) it was objectively unreasonable to not put forth evidence of mother's progress in returning J.L. to her care to rebut the presumption of depravity and (2) respondent was prejudiced because trial counsel's failure to introduce such evidence relieved the State from its burden of proving respondent unfit by clear and convincing evidence. The State asserts that it introduced extensive evidence of depravity, such that even if the presumption were rebutted by some evidence and the court weighed the evidence accordingly, respondent would have still been found unfit. We agree with the State.

25     Our supreme court has defined depravity as an inherent deficiency of moral sense and rectitude. *In re Addison R.,* 2013 IL App (2d) 121318, 23 (quoting *Stalder v. Stone,* 412 Ill. 488, 498 (1952) ). Section l(D)(i) of the Adoption Act provides a rebuttable presumption of a parent's depravity exists when "the parent has been criminally convicted of at least 3 felonies ***; and at least one of these convictions took place within 5 years" of the filing of the petition to terminate parental rights. 750 ILCS 50/l(D)(s) (West 2018). If a parent produces evidence opposing the presumption, the presumption ceases to operate, and the issue is determined on the evidence

adduced at trial as if no presumption had ever existed. *In re Addjson R.,* 2013 IL App (2d) 121318, 24.

26    Acts constituting depravity must be "of sufficient duration and of sufficient repetition to establish a deficiency in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotations omitted.) *In re JA.,* 316 Ill. App. 3d 553, 561 (2000). "Although a single felony conviction is insufficient to establish depravity, a pattern of criminality is sufficient." *In re Keyon R.,* 2017 IL App (2d) 160657, 22. Such a pattern of criminality may also be established through a course of conduct that indicates a moral deficiency and inability to conform to accepted moral standards. *Id*

� 27 Here, in addition to respondent's four felony convictions, which sufficiently raised the presumption of depravity, the State also introduced evidence that established a pattern of criminality. This pattern incltldes several instances of violating probation (for failing to appear in court, testing positive for drugs, and failing to report to jail), and misdemeanor convictions for domestic battery, resisting a peace officer, retail theft, and two DUis. In addition to respondent's previous convictions and incarcerations, the State also established that respondent was arrested and received a criminal charge for endangering the life of a child and several traffic citations (revoked license, revoked registration, uninsured vehicle, and failure to restrain a minor) for the August 2017 car accident. The State similarly introduced evidence that respondent was arrested due to the December 2017 domestic violence situation. Finally, the State also established that respondent had an ongoing felony DUI case, stemming from the March 2018 incident.

28 The State's evidence established that at least since 2008 (and for J.L.'s entire life), respondent has continually been incarcerated for various lengths of time, consistently engaged in the same types of behaviors that led to her previous incarcerations, and routinely violated the terms

of court ordered probation. Even if respondent put forth some evidence of her engaging in recommended services (as appellate counsel has identified as an example of the evidence that trial counsel could have put fort the rebut the presumption), that would not outweigh her historical and continual inability or unwillingness to conform to accepted moral standards, demonstrated by her repeated incarcerations for the same behaviors. Quite simply, it would be too little, too late. We therefore conclude that trial counsel was not ineffective for not introducing evidence to rebut the presumption of depravity.

¶ 129 Assuming, *arguendo,* that there was insufficient evidence to support the circuit court's finding on the depravity count, there was substantial evidence to establish that respondent was unfit for failing to protect J.L. from injurious conditions in her environment. The State's evidence established that J.L. was unsecured in the back of a van during respondent's single-vehicle accident and was pushed during the domestic violence incident between respondent and her brother. These incidents demonstrate that respondent not only failed to protect J.L. from injurious conditions, but also that respondent's actions *created* the injurious conditions. Because the State's uncontroverted evidence "is precisely the kind of evidence a court must consider in making a determination [of unfitness] under section 1(D)(g)," the cou1i did not err in finding respondent unfit for failing to protect J.L. from injurious conditions. *In re C W.,* 199 Ill. 2d 198, 215 (2002).

¶ 130 Ultimately, respondent was not prejudiced by trial counsel's performance, as there was no reasonable probability that the result of the unfitness proceeding would have been different based on the record before us. *In re A.P.-M,* 2018 IL App (4th) 180208, ¶ 41. Because respondent only challenged the findings of unfitness on appeal and did not address the adjudication of neglect or the best interests decision, we do not discuss them.

¶ 131                                     III. CONCLUSION

¶ 32    For the reasons stated, we affirm the circuit court's findings of unfitness and order terminating respondent's parental rights.

¶ 33    Affirmed.