NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230001-U

NO. 4-23-0001

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Tazewell County |
| | ) | No. 20JA262 |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v. | ) | Honorable |
| Emily M., | ) | David A. Brown, |
|       Respondent-Appellant). | ) | Judge Presiding. |
| | ) | |

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights concluding no meritorious issues could be raised on appeal.

¶ 2    On December 22, 2022, the trial court entered an order terminating the parental rights of respondent, Emily M., to her son, J.J. (born May 2018). Respondent appealed. Counsel was appointed to represent respondent on appeal. Appellate counsel now moves to withdraw on the basis that no meritorious argument can be raised on appeal. Appellate counsel's notice of filing and proof of service indicate he sent a copy of the motion to withdraw to respondent by mail. Respondent has not filed a response. After reviewing the record and counsel's motion, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On September 21, 2020, the State filed a shelter care petition alleging J.J. was neglected by his parents, respondent and Thomas G. (who is not a party to this appeal), in that J.J. was in an environment injurious to his welfare. Specifically, the petition alleged (1) J.J. suffered injuries to his face and head, (2) J.J. was left unattended by respondent, and (3) methamphetamine use by respondent. The trial court entered an order placing J.J. in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5            On October 8, 2021, the trial court entered an adjudicatory order, finding J.J. was abused or neglected in that that J.J.'s environment was injurious to his welfare as defined by section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)).

¶ 6            On November 5, 2021, the trial court entered a dispositional order finding that respondent and Thomas G. were unfit to care for J.J. The court made J.J. a ward of the court and granted custody and guardianship to DCFS. The court ordered respondent and Thomas G. to cooperate with DCFS and comply with specific terms as directed by DCFS.

¶ 7            On August 12, 2022, the State filed a two-count petition to terminate the parental rights of respondent and Thomas G., respectively. The petition alleged they both failed to make reasonable progress toward the return of J.J. to their custody after the adjudication of neglect during the nine-month period from October 8, 2021, through July 8, 2022.

¶ 8            On August 30, 2022, Thomas G. answered the State's petition, stating his intention to surrender his parental rights  in the event respondent's parental rights were terminated.

¶ 9            On October 26, 2022, a fitness hearing was held on the State's petition to

terminate respondent's parental rights.

¶ 10    At the hearing, Kayla Hanten, the caseworker assigned to the case on October 18, 2021, testified respondent was referred to services for counseling, domestic violence, and substance abuse and was required to submit to drug screenings four times per month. Hanten testified respondent was referred to counseling in November 2021 but was unsuccessfully discharged due to nonparticipation. Respondent was also referred to domestic violence classes in February 2022 and again was unsuccessfully discharged. Hanten stated respondent did not undergo a substance abuse assessment as required in February 2022. Hanten also testified that from October 8, 2021, through July 8, 2022, respondent did not participate in any of the four-times-per-month drug screenings she was directed to complete as part of the service plan. Hanten rated respondent's service plan as unsatisfactory. Hanten also testified to numerous missed appointments and several unsuccessful home visits. On cross-examination, Hanten stated respondent never suggested she had transportation issues as an excuse for her failure to attend counseling, domestic violence classes, or the substance abuse assessment. The State offered into evidence certified records from counseling and domestic violence class referrals over respondent's objection.

¶ 11    Respondent testified on her own behalf, stating she was unsuccessfully discharged from counseling due to "the termination trial" and contracting COVID-19. Respondent testified she failed to attend multiple visits with her caseworker because of scheduling conflicts with a pest control service, which visited her apartment periodically to treat a pest infestation. Respondent stated she missed her domestic violence classes due to an inability to obtain transportation.

¶ 12　　　　　The trial court found the State had met its burden by clear and convincing evidence, noting during the relevant nine-month period, respondent had not made any progress. The court specifically observed respondent failed to complete any services or submit to any drug screenings. The matter was continued for a best interest hearing.

¶ 13　　　　　During the December 2022 best interest hearing, Hanten testified she visited J.J.'s foster parents' home monthly and that it was "clean and appropriate," and a "strong bond" existed between J.J. and his foster parents, stating, "[h]e's happy and healthy" with them. Hanten noted that J.J. shows his foster parents "love and affection." Hanten further testified respondent had one-hour visits with J.J. in August and October 2022. Hanten advised respondent was unable to have visitation with J.J. in March 2022 due to the pest infestation at respondent's home. Hanten also stated respondent failed to attend a visitation in November 2022 without providing notice or an excuse. Hanten testified respondent only inquired with her about J.J. on one occasion in November.

¶ 14　　　　　Taylor S. testified she had been J.J.'s foster mother since May 2021. She testified they had a "great" relationship and that J.J. called her "mom." J.J. had a similar relationship with his foster father, Taylor S.'s husband. Taylor S. discussed with J.J. that respondent is his "mom" and that J.J. could see her. However, J.J. indicated he wanted to live with his "mommy and daddy," referring to Taylor S. and her husband. J.J. also identified the Taylor S.'s home as his home. Her direct contact with respondent initially began as "fine conversations," but eventually deteriorated into lengthy text message exchanges in the middle of the night, during which respondent accused her of "forcing" J.J. to call her "mommy." Taylor S. estimated she terminated contact with respondent sometime in early 2022 due to respondent's text messages. She also testified to receiving no cards, letters, gifts, or financial support for J.J. from respondent

but stated that respondent offered "once or twice" to help with clothes or pull-ups for J.J. Taylor S. testified that J.J. was enrolled in extracurricular activities and had developed friendships within the community. Taylor S. further stated she was willing to adopt J.J.

¶ 15 Respondent testified on her own behalf to being unable to attend visits with J.J. due to scheduling conflicts with a pest control service, which required her to meet them at her apartment, and being unable to obtain transportation to the visits located in Peoria, Illinois. Respondent testified to last having contact with Taylor S. in July 2021. Respondent stated her last visitation with J.J. was in October 2022. Respondent testified she knows J.J.'s favorite foods and toys. On cross-examination, respondent stated she did not call but did e-mail Hanten about missing the November 2022 visit because of the pest infestation that she maintained she had been contending with for the past "twenty-sevens [*sic*] months." Respondent also testified that, during the 27-month period, she had arranged for exterminators to visit her home, despite it being a rental property, because the landlord was "not doing their job." When asked why she would schedule conflicting extermination appointments during her visitation with J.J., respondent stated some of the missed visits were due to her inability to obtain transportation. However, respondent also testified she never requested a bus pass from Hanten to assist with her transportation issues.

¶ 16 J.J.'s guardian *ad litem* (GAL) testified that he visited the foster parents' home and described it as "immaculate." According to the GAL, J.J. was calling the foster parents "mom and dad," and J.J. was "integrated" into his foster family.

¶ 17 During closing arguments, respondent interrupted the proceedings and then left the courtroom prior to the trial court's ruling.

¶ 18 The trial court found respondent was unable to provide shelter and was still "unstable" after more than two years of J.J. being in substitute care. The court found it was "clearly" in J.J.'s best interest to remain with his foster family and terminated respondent's parental rights.

¶ 19 Respondent appealed, and counsel was appointed to represent her on appeal. Appellate counsel now moves to withdraw on the basis that any argument the trial court erred either in its finding of unfitness or best interest determination or that trial counsel provided ineffective assistance would be without merit.

¶ 20                                    II. ANALYSIS

¶ 21 The procedure for appellate counsel to withdraw set forth in *Anders v. California*, 386 U.S. 738 (1967), applies to a respondent's appeal of a decision to terminate her parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under this procedure, counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the record that might arguably support the appeal.' " *Id.* (quoting *Anders*, 386 U.S. at 744). Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *Id.* Counsel must then conclude the case presents no viable grounds for appeal. *Id.* In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that he or she has done so. *Id.* at 685-86.

¶ 22 Appellate counsel asserts he has reviewed the record on appeal and concluded an appeal in this case would be without arguable merit. Specifically, counsel asserts he considered whether the trial court's unfitness finding and best interest determination were in error and whether respondent was provided ineffective assistance of counsel. According to counsel, there

is no nonfrivolous argument that can be made on appeal. We granted respondent leave to file additional points and authorities. She has not responded. For the reasons that follow, we agree this appeal presents no issues of arguable merit, grant counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 23                                        A. Finding of Parental Unfitness

¶ 24                                   1. *Manifest Weight of the Evidence Claim*

¶ 25        Appellate counsel considered raising the argument that the trial court's unfitness finding was against the manifest weight of the evidence. However, counsel maintains any such argument would be meritless. We agree.

¶ 26        Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m) of the Adoption Act, a parent may be found unfit if she fails "(i) to make reasonable efforts to correct the conditions that were the basis for removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor ***, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of the neglected or abused minor." 750 ILCS 50/1(D)(m) (West 2020). "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 27        Here, the trial court's finding of unfitness was not against the manifest weight of the evidence. The State alleged respondent was unfit for failing to make reasonable progress toward the return of J.J. during the nine-month period from October 8, 2021, through July 8,

2022. The court found the State established unfitness by clear and convincing evidence where respondent did not complete *any* services or participate in any drug screenings as directed by DCFS. Hanten's testimony showed respondent made virtually no progress toward the return of J.J. during the relevant nine-month period. Respondent was unsuccessfully discharged from both counseling and domestic violence services because she failed to attend scheduled appointments, did not obtain a substance abuse assessment, and failed to participate in a single drug screening. While respondent testified she was unable to obtain transportation to her appointments, Hanten testified respondent never raised any transportation issues with her.

¶ 28       2. *Ineffective Assistance of Counsel Claim—Admission of Exhibits*

¶ 29       Appellate counsel also asserts no meritorious argument can be made on appeal that trial counsel was ineffective for failing to specify the basis for his objection to the admission of the State's exhibits during the fitness phase of the termination proceedings. We agree.

¶ 30       Parents have a statutory right to the effective assistance of counsel in proceedings to terminate parental rights. *In re Br. M.*, 2021 IL 125969, ¶ 42. Claims of ineffective assistance of counsel in termination proceedings are governed by the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *In re M.D.*, 2022 IL App (4th) 210288, ¶ 92. Under the *Strickland* standard, to establish a claim of ineffective assistance, a parent must show (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *In re M.F.*, 326 Ill. App. 3d 1110, 1119 (2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re A.R.*, 295 Ill. App. 3d 527, 531 (1998). "Failure to satisfy either prong precludes a finding of ineffective assistance of counsel." *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶ 41.

¶ 31 Here, the exhibits admitted into evidence were records of respondent's counseling and domestic violence class referrals. The trial court admitted the exhibits into evidence over trial counsel's objection. Appellate counsel states a "foundational objection would likely fail" where the State's exhibits were "properly certified and delegated records." Section 2-18(4)(a) of the Juvenile Court Act (705 ILCS 405/2-18(4)(a) (West 2020)) states, in relevant part, the following:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency *** made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of business of the hospital or agency and that it was in the regular course of such business to make it ***. *** A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employee."

Section 2-18(4)(a) permits the admission of records "if the provision's foundational requirements are satisfied." *In re R.R.*, 2022 IL App (4th) 220473, ¶ 23.

¶ 32 The record here shows that the State's exhibit No. 1 is accompanied by a "Certification of Delegation of Authority." It contains a signature by the head of the hospital or agency delegating authority and certifying the records as "made in the regular course of business and that it was in the regular course of business to make such records." The State's exhibit No. 2 contains a nearly identical form, also titled, "Certification of Delegation of Authority." It

likewise contains the same requisite content as described by section 2-18(4)(a). Given that the statutory foundational requirements are satisfied, the healthcare records were admissible pursuant to section 2-18(4)(a). Trial counsel's general objection was properly overruled, and a foundational objection would have been unavailing. Accordingly, we agree with appellate counsel that no nonfrivolous argument on appeal can be made respondent's trial counsel was ineffective for failing to object to the admission of the State's exhibits during the fitness hearing.

¶ 33    3. *Ineffective Assistance of Counsel Claim—Failure to Develop Respondent's Testimony Regarding Her Inability to Attend Services as Directed by DCFS*

¶ 34    Appellate counsel asserts he considered raising the issue of whether trial counsel was ineffective for failing to develop respondent's testimony regarding her inability to attend services as directed by DCFS.

¶ 35    Again, to show ineffective assistance, respondent must show her counsel's performance was both deficient and that said deficiency resulted in prejudice. Failure to show either deficient performance or prejudice precludes a finding of ineffective assistance. "Judicial review of counsel's performance is highly deferential." *A.P.-M.*, 2018 IL App (4th) 180208, ¶ 40. "A defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." *Id.*

¶ 36    Hanten testified respondent did not comply with referrals for counseling, domestic violence classes, a substance abuse assessment, or drug screenings. On cross-examination, respondent's counsel asked Hanten if respondent ever raised a concern about transportation. Hanten replied she had not. Trial counsel then asked respondent why she was unable to attend counseling for which she had been referred. Respondent initially stated she was discharged from counseling due to contracting COVID-19 and then, most recently, due to the

- 10 -

fitness hearing itself. Respondent also told trial counsel she missed visits with Hanten because she had experienced a pest infestation at her apartment since March 2021 that required her to be at home to allow access for exterminators. Respondent also testified she could not make her domestic violence appointments because she could not get transportation at 5 p.m., when "everybody was just getting off of work and it's all the way in Peoria." On cross-examination, however, respondent admitted to oversleeping as a reason she missed a counseling appointment. Respondent testified she could not recall why she missed her December 22, 2021, appointment.

¶ 37    Here, respondent fails to demonstrate deficient performance of counsel. The State's evidence showed respondent failed to comply with any of the DCFS-referred services. The record reveals trial counsel sought to mitigate Hanten's testimony by asking her if respondent had ever raised transportation issues with her. Trial counsel then gave respondent the opportunity to explain why she was unable to comply with services. Respondent offered her becoming sick with COVID-19 as a reason for missing one counseling session in November 2021 and essentially blamed a pest infestation for missing the remaining sessions. Respondent only testified to transportation issues with regard to being unable to attend her domestic violence referral. On cross-examination, however, respondent admitted to oversleeping on one occasion and not being able to recall the reason for missing a December 2021 counseling session.

¶ 38    In sum, the record demonstrates trial counsel attempted to develop an evidentiary basis to explain why respondent failed to comply with services, both through cross-examination of the State's witness and through respondent's own testimony. Given the nature of respondent's replies, developing those answers with further questioning could reasonably be viewed as risking further damage to respondent's position. Counsel's choice to avoid any further damage falls under reasonable trial strategy, and not ineffective assistance. Accordingly, we agree with

appellate counsel no nonfrivolous issue can be raised on appeal that trial counsel was ineffective for failing to develop respondent's testimony regarding her inability to attend DCFS-directed services.

¶ 39                                                 B. Best Interest

¶ 40          Appellate counsel also contends that no viable challenge to the trial court's best interest determination can be made. We agree.

¶ 41          When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). At a best interest hearing, the State must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the minor. *Id.* at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)). These factors include the following:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. We will reverse the trial court's best interest determination only if it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 42        Here, the trial court explicitly referenced the "statutory best interest factors" and highlighted most of the factors set forth in section 1-3(4.05) in explaining its ruling. The court noted that the foster parents had provided for J.J.'s physical safety and welfare for nearly two years, while respondent was unable to provide J.J. shelter due to a pest infestation. The court noted that J.J.'s identity was forming with his foster family and he was developing a sense of attachment with them. The court also found that the factors relating to J.J.'s sense of security, familiarity, continuity of affection, and the least disruptive placement "all favor[ed] termination." The court additionally noted that J.J. is well-bonded with his foster family and has developed ties within the community, specifically at his school. The court found that permanency was "amplified" by the inability of J.J. to return to respondent in the foreseeable future due to her instability. The court noted J.J.'s biological father's preference was the termination of his parental rights as well.

¶ 43        Following our review of the record, we agree with appellate counsel that any argument it was not in J.J.'s best interest to terminate respondent's parental rights would be meritless. Indeed, the trial court's best interest finding was based on an appropriate consideration of the statutory factors and was not against the manifest weight of the evidence.

¶ 44                         III. CONCLUSION

¶ 45        For the reasons stated, we grant appellate counsel's motion to withdraw and

affirm the trial court's judgment.

¶ 46        Affirmed.