NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240750-U

NO. 4-24-0750

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|      Petitioner-Appellee, | ) | No. 22JA453 |
|      v. | ) | |
| Nicole B., | ) | Honorable |
|      Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) the trial court's finding of parental unfitness was not against the manifest weight of the evidence and (2) respondent's claims of ineffective assistance of counsel were either not properly before the court for review or not proven.

¶ 2    Respondent mother, Nicole B., appeals from the trial court's judgment terminating her parental rights to her daughter, L.J. (born September 2022). On appeal, respondent argues (1) the attorneys appointed to represent her during the neglect and termination proceedings rendered ineffective assistance and (2) the court's finding of parental unfitness during the termination proceedings is against the manifest weight of the evidence. For the reasons that follow, we affirm the court's judgment.

¶ 3                   I. BACKGROUND

¶ 4                A. Neglect Proceedings

¶ 5 One week after the minor's birth, the State filed a petition for adjudication of wardship, alleging the minor was neglected in that she was subject to an environment injurious to her welfare because respondent's "mental health issues *** prevent[ed] her from properly parenting, thus placing the minor at risk of harm." The trial court appointed respondent counsel and entered an order granting temporary custody to the Illinois Department of Children and Family Services (DCFS). The minor was then adjudicated neglected in January 2023 and made a ward of the court in February 2023.

¶ 6 B. Motion to Terminate Parental Rights

¶ 7 In November 2023, the State filed a motion to terminate respondent's parental rights, which it later amended. In the amended motion, the State alleged respondent was an unfit parent in that she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) make reasonable efforts to correct the conditions that caused the minor to be removed from her care during a nine-month period following the adjudication of neglected, namely, February 20, 2023, to November 20, 2023 (*id.* § 1(D)(m)(i)); and (3) make reasonable progress toward the return of the minor to her care during a nine-month period following the adjudication of neglected, again namely, February 20, 2023, to November 20, 2023 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint DCFS as guardian, with the power to consent to adoption.

¶ 8 C. Fitness Hearing

¶ 9 In February 2024, the trial court conducted a fitness hearing. The State moved for the court to take judicial notice of the pleadings and orders in the court file, which was granted over no objection. The State also moved for the court to admit an integrated assessment completed

on November 1, 2022, three service plans dated November 2, 2022, February 15, 2023, and June 22, 2023, and certified hospital records, all of which were granted over no objection. And last, the State presented testimony from the caseworker who had been assigned to the minor's case since April 2023. Respondent did not present any evidence. The following is gleaned from the evidence presented.

¶ 10 Shortly after the minor's birth, the minor was brought into DCFS's care due to concerns with respondent's ability to safely care for the minor. The integrated assessment noted the following: "It was reported that [respondent] has developmental delays and diagnosed mental health concerns that inhibit her ability to safely parent and protect [the minor]. [Respondent] has had random and unpredictable outbursts which have prevented her from providing proper care for [the minor]." The caseworker, on cross-examination, explained the minor came into DCFS care due to an instability in respondent's mental health and an incident where she kicked a hospital nurse. The integrated assessment noted during an interview, respondent reported she accidently kicked the nurse. The integrated assessment also noted respondent reported having been previously diagnosed with "bipolar disorder, PTSD, ADD/ADHD, and insomnia" and respondent "continued to experience mood dysregulation, anxiety, and traumatic stress symptoms."

¶ 11 Respondent regularly attended in-person supervised visits with the minor after the minor was brought into DCFS's care. The visits occurred twice a week, and respondent would often bring toys and clothing for the minor. Between April 2023 and June 2023, respondent began missing visits, leaving visits early, and having behavioral issues during visits. As for the latter, the caseworker testified to incidents where respondent reported urinating and defecating on herself and then becoming upset when the case aides asked if she needed help. The caseworker also testified to an incident in July 2023 where respondent threw a wastebasket at a case aide.

Respondent's visitations were reduced from twice a week to once a week in July 2023.

¶ 12 Around August 2023, respondent moved to Florida. The caseworker testified respondent later reported her paramour had done "something to her," and her "therapist" told her to leave town "if she want[ed] to live." The caseworker offered respondent assistance with domestic-violence services, which respondent declined out of reported fear. Respondent inquired about virtual visitations with the minor while she was in Florida, which the caseworker scheduled for once a week. The caseworker estimated respondent missed approximately 25% of the virtual visits. Respondent did not provide the minor with toys or clothing after leaving Illinois. The last in-person visit occurred in August 2023. The caseworker testified, immediately prior to the fitness hearing, she learned respondent was residing in Alabama.

¶ 13 As for recommended services, the caseworker testified respondent was informed of the importance of completing services upon the minor being brought into DCFS's care. The dispositional order directed respondent to cooperate with DCFS and its cooperating agencies and all recommended services. The caseworker testified she met with respondent upon being assigned to the minor's case and then "tr[ied] to set up—talk to her about her services" during visitations.

¶ 14 It was recommended respondent complete a mental-health assessment and individual therapy. The caseworker testified the previous caseworker referred respondent for a mental-health assessment, and respondent reported having seen a therapist. The caseworker did not, however, have documentation of respondent completing the assessment or seeing a therapist because respondent had not executed a proper release of information. The caseworker explained respondent initially refused to sign a release and then later, when court-ordered, signed a release "through the body of the release," as opposed to on the signature line, which the provider refused to accept. As a result, the caseworker referred respondent for another mental-health assessment in

July 2023, which respondent did not complete. The caseworker testified she was not "aware of" respondent engaging in any mental-health treatment as of the date of the fitness hearing.

¶ 15    It was recommended respondent complete a psychological evaluation. The caseworker testified respondent attended an appointment for a psychological evaluation around July 2023 but reported her attorney told her not to talk to the psychologist. After respondent's attorney and the caseworker corrected respondent's misunderstanding, respondent talked to the psychologist about "planes in the sky" and then left the appointment without completing the evaluation. Respondent had not completed the evaluation as of the date of the fitness hearing.

¶ 16    It was recommended respondent cooperate with the agency assigned to monitor the welfare of the minor. The caseworker testified respondent communicated with her through text messages. She explained respondent would state her phone did not work or she could not talk when the caseworker called her. The caseworker testified respondent would often avoid contact during visitations by leaving early or reporting her attorney told her not to talk to the caseworker. After respondent moved to Florida, she continued to avoid contact during visitations by reporting her video and/or audio were no longer working when the caseworker attempted to speak with her. The caseworker had to rely upon text messages to make contact with respondent.

¶ 17    It was recommended respondent complete a parenting program. The caseworker testified the prior caseworker referred respondent for a parenting assessment. Respondent attended the assessment but had a "meltdown" and did not complete it. The provider indicated respondent could not be seen again until she had undergone mental-health treatment. Respondent had not completed a parenting program as of the date of the fitness hearing.

¶ 18    It was recommended respondent complete partner-abuse services. The integrated assessment noted there were reports of respondent and her paramour arguing at the hospital

following the minor's birth and a report of respondent throwing a cup of water at her paramour. The integrated assessment also noted respondent reported she had no concerns of power and control or interpersonal violence in the relationship.

¶ 19 It was recommended respondent complete requested drug screenings. The service plans noted respondent had stated "she can[ ]not pee due to her medications." The service plans also noted the agency had requested information from respondent's doctor about the effects of her medications.

¶ 20 The caseworker testified the concerns with respondent's untreated mental health and the possible resulting harm to the minor prevented respondent from receiving unsupervised visitations with the minor.

¶ 21 After hearing recommendations and taking the matter under advisement, the trial court issued an oral pronouncement of its decision. The court, after thoroughly reviewing the evidence on the record, found respondent was an unfit parent for all the reasons alleged in the State's amended motion to terminate parental rights. The court noted, in part, the following:

> "I am aware of [respondent's] mental health struggles and her disabilities; however, I find that it's not an issue of the agency failing to provide tailored or appropriate services for her based on her mental health and her disabilities. I find that she has made a conscious choice not to attend services, not to attend visitation[s], and this has, quite frankly, thwarted the agency's efforts."

The court also noted, "It's impossible for this Court to conclude, after reviewing all of the evidence and testimony that was presented, that [the minor] can or will be returned home successfully to [respondent] in the near future."

¶ 22                                  D. Termination of Parental Rights

¶ 23            In April 2024, the trial court, after conducting a best-interest hearing and finding it would be in the minor's best interest to terminate respondent's parental rights, entered a written order terminating her parental rights. Thereafter, respondent filed a timely notice of appeal from the court's judgment terminating her parental rights.

¶ 24            This appeal followed.

¶ 25                                           II. ANALYSIS

¶ 26            On appeal, respondent argues (1) the attorneys appointed to represent her during the neglect and termination proceedings rendered ineffective assistance and (2) the trial court's finding of parental unfitness during the termination proceedings is against the manifest weight of the evidence. The State disagrees with respondent's arguments.

¶ 27                                        A. Unfitness Finding

¶ 28            We begin with respondent's challenge to the trial court's unfitness finding. Respondent argues the court's finding is against the manifest weight of the evidence.

¶ 29            In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30            The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)). Section 1(D)(m)(ii) states, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the

adjudication of neglected." *Id.*

¶ 31 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 38, 215 N.E.3d 302. The benchmark for measuring a parent's progress toward reunification

"encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

This court has stated a parent has made reasonable progress when "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the [trial] court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 32 In determining a parent's fitness based on reasonable progress, a trial court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.*

¶ 33 In this case, the relevant time period was February 20, 2023, to November 20, 2023. During that period, the evidence showed an absence of progress with the recommended services. In particular, the evidence showed, despite the fact the minor came into DCFS's care because of

concerns with respondent's mental health, respondent was not engaging in the recommended mental-health services. The absence of progress with the services ultimately prevented the trial court from concluding it would be able to order the return of the minor to respondent's custody in the near future. We outright reject respondent's suggestion on appeal that the recommended services were superfluous and "not related to some parental short-coming." Given the evidence presented and the information gleaned therefrom, we find the court's unfitness finding based upon respondent's failure to make reasonable progress is not against the manifest weight of the evidence.

¶ 34    As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122. We do, however, commend the court for its detailed oral pronouncement of its decision, which we find demonstrates the careful consideration it gave to the issue of fitness.

¶ 35                    B. Claims of Ineffective Assistance of Counsel

¶ 36    We turn next to respondent's challenge to the performance of counsel. Respondent argues the attorneys appointed to represent her during the neglect and termination proceedings rendered ineffective assistance.

¶ 37    In proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)), a parent has a statutory right to counsel. *In re Br. M.*, 2021 IL 125969, ¶ 41, 182 N.E.3d 693 (citing 705 ILCS 405/1-5(1) (West 2016)). Included within the statutory right to counsel is, by implication, a right to effective assistance. *Id.* ¶ 42.

¶ 38    When evaluating a claim of ineffective assistance, we apply the rubric set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See, *e.g.*, *Br. M.*, 2021 IL 125969, ¶ 43; *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶¶ 37-44, 110 N.E.3d 1126. Under the *Strickland* rubric, a parent,

to establish a claim of ineffective assistance, must show (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *In re M.F.*, 326 Ill. App. 3d 1110, 1119, 762 N.E.2d 701, 709 (2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re A.R.*, 295 Ill. App. 3d 527, 531, 693 N.E.2d 869, 873 (1998). A parent's failure to satisfy either prong of the *Strickland* rubric precludes a finding of ineffective assistance of counsel. *A.P.-M.*, 2018 IL App (4th) 180208, ¶ 41.

¶ 39        First, with respect to respondent's claim concerning the performance of her counsel during the neglect proceedings, we are without jurisdiction to entertain respondent's claim, as she did not file a timely notice of appeal from the judgment adjudicating the minor neglected and making the minor a ward of the court. See *In re Leona W.*, 228 Ill. 2d 439, 456-57, 888 N.E.2d 72, 81 (2008) (finding the appellate court lacked jurisdiction to consider alleged errors made during the abuse proceedings in an appeal from a judgment terminating parental rights); *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 24, 191 N.E.3d 771 ("Even where a respondent alleges that she received ineffective assistance of counsel during the adjudicatory phase of the proceedings, we categorically lack jurisdiction to entertain such an argument in an appeal from an order terminating parental rights."). Respondent, in an attempt to overcome the jurisdictional timeliness hurdle, suggests the United States Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), allows us to consider whether her counsel rendered ineffective assistance by failing to appeal said judgment. However, even if we accepted respondent's suggestion, we would still be without jurisdiction because respondent's notice of appeal did not identify the dispositional order, and a dispositional order is not within the procedural progression of orders terminating parental rights. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (providing the notice of appeal "shall specify the

judgment or part thereof or other orders appealed from and the relief sought from the reviewing court"); *Ja. P.*, 2021 IL App (2d) 210257, ¶ 27 ("[I]t is clear that adjudicatory and dispositional orders are not within the procedural progression of orders terminating parental rights.").

¶ 40　　　　Second, with respect to respondent's claim concerning the performance of her counsel during the termination proceedings, respondent has not proven her claim. Respondent asserts counsel rendered ineffective assistance by failing to object to and eliciting hearsay from the caseworker. Specifically, respondent contends counsel erroneously allowed or introduced hearsay testimony related to the reasons for the minor being taken into DCFS's care and her (1) being advised of the importance of completing recommended services early in the case, (2) having behavioral issues during visitations and assessments, and (3) moving to Alabama. While respondent contends the testimony was inadmissible, she fails to explain why there is a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different. Excluding the complained-of testimony, the other evidence showed, despite the fact the minor came into DCFS's care because of concerns with respondent's mental health, respondent was not engaging in the recommended mental-health services. Given this evidence, we are not convinced there is a reasonable probability the result of the hearing would have been different had respondent's counsel objected to and/or did not elicit the complained-of testimony.

¶ 41　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　We affirm the trial court's judgment.

¶ 43　　　　Affirmed.